## STEVENS vs. THE ERIE RAILWAY COMPANY.

1. An act authorizing a railroad company to construct their road along a river, does not authorize them to construct it *in* or *upon* the river, but along side of it. The word "along" does not mean "upon," unless the context shows that it is used in the sense of *upon and along*.

2. Authority to construct a railroad *along* a river, must be held not to authorize it to be constructed in the river from the subject matter, as it could not be constructed in the river, without authority first to fill in the river bed.

3. That a power granted will not be sufficient to effect the object, will not by implication enlarge the power, unless it appears that the legislature in granting it, knew that such construction was necessary to effect the object. The applicants must see to it that the power conferred is sufficient to effect

their purpose, and not seek by implication to extend it in a manner which the legislature might not have been willing to grant.

4. Where the provision of an act clearly shows that it was intended that the road authorized by it should be constructed outside of a river, no necessity to go into the river for the construction of it will, by implication, confer authority to construct it in the river. The grant must fail if the road cannot be built outside of the river.

This case came up on a rule to show cause why an injunction should not issue against the defendants, to restrain them from running trains on the road of the Paterson and New York Railroad Company, leased to them, in front of the lands of the complainant, and over a wharf built by him in front of them, on the shore of the Passaic, and from laying a second track on part of his wharf that was further in the river, and in the river beyond his wharf. The affidavits annexed to the bill, the answer of the defendants, and the affidavits annexed, and affidavits in reply, were read without objection.

*Mr. Abeel* and *Mr. Williamson*, for the rule.

*Mr. C. Parker,* contra.

THE CHANCELLOR.

The principal question in this case is the same as that decided in the Court of Errors, in a writ of error by the Paterson and New York Railroad Company, against the complainant in this suit. That question is, whether that railroad company, by their charter or the supplement to it of 1866, were authorized to construct their road in the Passaic river. The Court of Errors almost unanimously affirmed the decision of Justice Depue at circuit, holding that they were not so authorized.

But the Chief Justice, in delivering the opinion of the Court of Errors, says: " I think there are no terms used in this statute which, fairly interpreted, imply an intention to confer on the defendants the privilege asserted, nor does

such privilege *necessarily result* from the general powers conferred." And Justice Depue, in his opinion at the circuit, says : " An intent to alienate any portion of the lands under water belonging to the state, will not, in the absence of a formal grant in express words, be implied, except upon the clearest *necessity to effectuate* the purpose of the legislature in investing the grantee with public franchises." And the defendants here contend, that while the Court of Errors have settled that the words used in the act of 1866, " authorizing them to construct their road along the Passaic river," of themselves, only authorize them to construct it along side of the river, and not in or upon it; yet that as facts shown in this case, and not then before the court, demonstrate so clear a necessity for effectuating the purpose of the legislature, that an intention to confer the privilege asserted will be implied, and the privilege asserted necessarily results from the powers conferred.

The whole force of the grant depends upon the meaning of the phrase ' *along* the river.' The established and only proper meaning of this word as here used, is *beside* and following the course of, or *along side.* When the phrase 'upon *and* along' a road is used, the word *upon* qualifies the meaning of along; and this is the case in almost all the acts cited to show that *along* may be used to mean *upon,* as well as *along side of.* The subject matter must control the meaning of the word were there any doubt; a railroad cannot be built *in* a river unless it is first filled in, and no authority is here given *to* fill it *in.* And even if giving authority to construct a railroad along a turnpike, could be held to authorize laying it upon the turnpike, such could never be inferred, if the authority given was to lay it along a canal. The subject matter in that case as in this, forbids such construction. And when language is so plain, and so definite in its meaning, as this phrase is here, no implication can change it, or prevail against it. An act authorizing a work to be constructed on the west bank of a river, might

as well be construed to authorize it on the east bank, on account of insuperable difficulties on the bank designated.

Such implication as is referred to in these opinions, only arises where it is not contrary to the provisions of the act or the natural and proper meaning of the words used. An act authorizing the construction of a railroad from Newark to Jersey City, might be held by implication to authorize bridges over the two navigable rivers on the route, although it requires positive authority to bridge navigable rivers, which are public highways. But such authority could never be implied, if the terms of the grant expressly excluded the right to bridge navigable streams, as the words "along the river" here exclude their going into it. A right to bridge all streams not actually used for navigation, would exclude the implication.

Power to construct a canal not more than seventy feet wide, restricted at a certain point to pass between two houses, which are only fifty feet apart, would not give power to take down either of the houses. The word *between* prevents all implication. Nor, in this case, if the road had been directed to be constructed between high water mark, and a stone wall along the east line of the cemetery, could authority have been implied to construct it in the river, or inside of the cemetery wall, although the space between them had been only ten feet.

Parties applying for a grant must see to it that the terms used will effect their purpose, or else the grant must fail; it will not be sustained at the expense of others intended to be protected. The legislature here intended to protect the public by the words "along the Passaic river," and the cemetery by the words "outside and to the east of the present stone wall embankment of the cemetery grounds." And a party taking a grant for such easement, must fail if the subject matter is not there.

Perhaps if the legislature had been advised that there was no space between such embankment and the river, they would have granted the right further to invade the ceme-

tery, or perhaps to take the public property below high water line. This court cannot decide which they would or ought to have granted. It can hold that they have not granted either.

But the necessity for such construction does not arise from the facts; they are not such as assumed in the above view. The act provides that the railroad shall not encroach upon the lands of the cemetery, which *are used* for burial purposes in said cemetery, which would imply that it might occupy those lands in it not used for such purposes; and it provides that it should be constructed "outside and to the east of the present stone wall embankment of the cemetery company." This appears to fix a definite line as the east boundary of the part of the cemetery, which the railroad should not invade, *outside* of which it should be built. But in fact there is not, and never was, such *stone wall embankment*. There was nothing but a decayed picket fence. There is a stone wall or fence between the cemetery and the complainant's lands, to the south of it; a mere division fence with no embankment. It terminates thirty-three feet from high water line. The legislature were mis-informed and deceived as to the facts on which they founded this grant; and the words of the grant which protect the rights of the state, cannot be held to be controlled and used in a meaning different from their proper and usual sense, by facts of which the grantors were not informed, or as to which they were deceived.

And the fact that this provision requires that before entering upon *the cemetery lands* the railroad company shall enter into an agreement about a stone wall, shows that an entry on these lands was intended.

The provision that the road shall not encroach on lands used for burial purposes, is entirely inconsistent with the idea that the road would be built in the river, or on the shore, as it could not have been supposed that the river bed was used for interments. Also the provision that in front of the cemetery the road should be near the line of

high water, shows a design to save as much of the cemetery upland as possible.   If intended to protect the river from invasion, it would have been extended to the whole route.

Besides, there is thirty-three feet between the end of this stone wall and high water, and sixty feet between the nearest lands that have been used for burial purposes and high water.   This is sufficient for two tracks; there is no necessity for more, none is shown, no necessity for any greater width appears to have been contemplated by the legislature, which must appear, to extend any grant by implication beyond its terms.

This grant is so restricted by its very terms and restrictions, that it cannot be extended by implication arising from the necessity of such extension for the construction of the work; and if it could be, no such necessity exists.   The decision of the Court of Errors must control this case, without reference to the question of estoppel.   The defendants have no right to construct the road in the river.

With regard to the track already built and in use, the complainant has a sufficient remedy at law.   It was placed there without authority.   He has now filled in the shore to low water line, and the land so reclaimed is his fee to appropriate to his own use.   Ejectment will lie, and an action for mesne profits will in one suit give him his damages for the detention.   Injunctions do sometimes issue to restrain constantly repeated trespasses requiring a continued succession of suits, but not where ejectment will restore the complainant to all his rights.   Besides, the trains of the defendant are daily running over this track, and to stop them immediately would cause great inconvenience to the public as well as to the defendants; and in such case this court, when it has any discretion, will not interfere by injunction, but leave the complainant to his remedy at law.

The second track is being constructed, or is about to be constructed, in part upon the land filled in and reclaimed by the complainant on the shore, and in part on land filled in

below low water line, and in part on lands in the river not reclaimed.

As to the part filled in on the shore, it is the freehold of the complainant, and he has a right to the protection of this court to enforce the provision of the Constitution, that lands in such cases shall not be taken until after compensation; as to the part beyond this, he has a right of passage over it to the river. He has it in common with the rest of the public; but it was expressly held in the Court of Errors that this injury to him was peculiar and different from that of the rest of the public, and that he was entitled to sustain a civil action for that injury.

According to the view taken of the grant to their lessors, by the Court of Errors, the defendants are mere trespassers, willful wrong doers. They have no rights that can be taken into consideration and weighed against the rights of the complainant, or the importance of his injuries. The public travel or transportation will not be injured or interfered with, and there is no reason why the relief to which the complainant is entitled should be withheld. The right is settled by the decision of the highest court of law, which has also held that such a structure is an interference with it.

Let the injunction prayed for against the building a second track, and driving piles in front of the complainant, issue. That against the running of trains on the track already built, is refused.